1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE SAN
DIEGO ELECTRICAL PENSION
TRUST et al.,

                Plaintiffs,

    v.

EXCELLENT ELECTRIC, INC., a
California corporation,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 05cv1153 J (LSP)

**ORDER:**

**(1) GRANTING PLAINTIFFS'
MOTION FOR DEFAULT
JUDGMENT AGAINST
DEFENDANT;**

**(2) AWARDING DAMAGES IN THE
AMOUNT OF $15,839.77 TO
PLAINTIFFS; and**

**(3) GRANTING PLAINTIFFS
FIFTEEN (15) DAYS LEAVE TO
FILE NECESSARY EVIDENCE TO
SUPPORT CALCULATION OF
INTEREST OWED TO PLAINTIFF
NATIONAL ELECTRIC BENEFIT
FUND**

       Before the Court is Plaintiffs Board of Trustees of the San Diego Electrical Pension Trust, et al.'s ("Plaintiffs") Motion for Default Judgment against Defendant Excellent Electric, Inc. ("Defendant"). [Doc. No. 18.] Defendant has not filed an opposition to Plaintiffs' Motion for Default Judgment. The Court reviewed the papers submitted and determined that the issues presented are appropriate for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1). [Doc. No. 21]; *see* S.D. Cal. Civ. R. 7.1(d)(1) (2006).

For the reasons discussed below, the Court (1) **GRANTS** Plaintiffs' Motion for Default Judgment; (2) **AWARDS** Plaintiffs $8,003.23 in unpaid contributions; (3) **AWARDS** Plaintiffs $871.57 in interest on the unpaid contributions (4) **GRANTS** Plaintiffs fifteen (15) days **leave to file** the necessary evidence to calculate the interest owed to the National Electrical Benefit Fund; (5) **AWARDS** Plaintiffs $1,359.87 in liquidated damages; (6) **AWARDS** Plaintiffs $5,106.50 in attorneys' fees; and (7) **AWARDS** Plaintiffs $498.60 in court costs.

### *Background*

Defendant is a corporation with its principal place of business in El Cajon, County of San Diego, CA. (*See* Compl. ¶ 3.) Plaintiffs are a group of joint labor-management trust funds and various entities all administered and located within San Diego County, except for Plaintiff Board of Trustees of the National Electrical Benefit Fund, which is an entity with its principal place of business in the State of Maryland. (*See* Compl. ¶¶ 1-3.) Defendant and Plaintiff the International Brotherhood of Electrical Workers Local Union No. 569 are signatories to a Collective Bargaining Agreement. (*See* Compl. ¶ 7; Pls.' Reply to Order Re: Supplemental Briefing on Pls.' Mot. for Default J., Ex. C.) Because Defendant employed electricians covered by the Collective Bargaining Agreement, it was required to report the hours worked by these employees and pay monthly fringe contributions on their behalf to Plaintiffs. (*See* Compl. at 4.)

As a signatory to the Collective Bargaining Agreement, Defendant was also a signatory and governed by the terms of the Trust Agreements for the San Diego Electrical Pension Trust, the San Diego Electrical Health & Welfare Trust, the San Diego Electrical Training Trust, the San Diego Electrical Annuity Plan, and the National Electrical Benefit Fund. (*See* Mot. for Default J. at 2, Ex. B, C, D, E, and F.) These Trusts provide for the assessment of interest and liquidated damages in the event that Defendant is delinquent in its fringe benefit contributions to Plaintiffs. (*See id.* at 3.)

### *Procedural History*

On June 2, 2005, Plaintiffs filed and served a Complaint against Defendant, alleging a demand for accounting, breach of contract, injunctive relief, and declaratory relief. [Doc. Nos. 1, 2.] On November 3, 2005, Defendant's attorney filed a motion to be relieved as counsel. [Doc. No. 11.] On February 23, 2006, this Court granted the motion and provided Defendant

leave until March 27, 2006, to find replacement counsel and have said counsel appear on its behalf. [Doc. No. 17.] Because no replacement counsel appeared on Defendant's behalf by March 27, 2006, this Court entered default in Plaintiffs' favor, *nunc pro tunc*, on April 1, 2006. (*See* Default Order at 1.)

On May 5, 2006, Plaintiffs filed the instant Motion for Default Judgment against Defendant. [Doc. No. 19.] Defendant filed no response. On September 11, 2006, this Court filed an Order for Supplemental Briefing on Plaintiffs' Motion for Default Judgment. [Doc. No. 22.] On September 21, 2006, Plaintiffs filed a Reply to the Order for Supplemental Briefing. [Doc. No. 23.]

### *Legal Standard*

A default judgment is appropriate where the defendant "has received actual or constructive notice of the filing of the action and failed to answer." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988). A plaintiff seeking judgment by default must apply to the Court if the plaintiff's claim is not "for a sum certain or for a sum which can by computation be made certain." Fed. R. Civ. P. 55(b)(1), 55(b)(2). Entry of default judgment is at the discretion of the Court. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

The Court considers the following factors when deciding a plaintiff's motion for entry of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72. When evaluating the *Eitel* factors and assessing liability, the well-pleaded " 'factual allegations of the complaint, except those relating to the amount of damages, [are] taken as true.' " *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). A default judgment can be entered without a hearing if the "amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). In assessing

damages, the court must review facts of record, requesting more information if necessary, to fix the amount to which plaintiff is lawfully entitled.  *See Pope v. United States*, 323 U.S. 1, 12 (1944).

### *Discussion*

### I.    Rule 55(b)(2) of the Federal Rules of Civil Procedure Provides for Entry of Default Judgment against Defendant

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides several procedural requirements before this Court can enter default judgment against Defendant.  Default judgment cannot be entered against infants or incompetent persons unless they are represented by a "general guardian, committee, conservator, or other such representative."  Fed. R. Civ. P. 55(b)(2).  Additionally, the defendant must "be served with written notice of the application for judgment at least 3 days prior to the hearing" if the defendant has appeared in the action.  *Id.*

Here, Plaintiffs have satisfied the requirements of Rule 55(b)(2).  Defendant is a California corporation and thus the protections provided to infants and incompetent persons are inapplicable.  (*See* Compl. ¶ 5.)  On May 5, 2005, Plaintiffs served their Motion for Default Judgment, which included the hearing date of June 5, 2006, on Defendant.  (*See* Mot. for Default J.)  Therefore, Defendant received notice of Plaintiffs' Motion for Default Judgment more than three days prior to the hearing date on such Motion.  Accordingly, and for the foregoing reasons, the Court **FINDS** that Plaintiffs have met the requirements of Rule 55(b)(2) of the Federal Rules of Civil Procedure.

### II.    The *Eitel* Factors Weigh in Favor of Granting Entry of Default Judgment

The *Eitel* factors weigh in favor of granting entry of default judgment, and the Court will address each in turn.  *See Eitel*, 782 F.2d at 1471-72.

05cv1153 J (LSP)

1

2

**A.**     **Plaintiffs Filed a Well-Pleaded Complaint and are Likely to Succeed on the Merits**

3

**1.**     **Sufficiency of the Complaint**

4

Plaintiffs filed a well-pleaded Complaint as required by the Federal Rules of Civil

5

Procedure.  Plaintiffs set forth the parties pursuant to Federal Rule of Civil Procedure 10(a).

6

(*See* Compl. ¶¶ at 1-5.)  *See* Fed. R. Civ. P. 10(a).  They also included a short and plain

7

statement of the claims entitling them to relief, and requested judgment for the amount found to

8

be due on the delinquent contributions as well as interest and liquidated damages pursuant to

9

Federal Rule of Civil Procedure 8(a). (*See generally* Compl.)  *See* Fed. R. Civ. P. 8(a).  Plaintiffs

10

also properly served Defendant with the Complaint and a summons specifying the deadline for

11

responding to the Complaint. [Doc. Nos. 1-2.]  *See* Fed. R. Civ. P. 4-5.  Accordingly, and for the

12

foregoing reasons, the Court **FINDS** that Plaintiffs' Complaint is sufficient under the Federal

13

Rules of Civil Procedure.

14

**2.**     **Merits of Plaintiffs' Substantive Claims**

15

In order for this Court to enter a Default Judgment against Defendant, Plaintiffs'

16

Complaint must state a claim upon which Plaintiffs may recover.  *See Danning v. Lavine*, 572

17

F.2d 1386, 1388 (9th Cir. 1978).  If the Court finds that Plaintiffs would have likely succeeded

18

on the merits of their substantive claims had Defendant not defaulted, then default judgment is

appropriate.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

19

A review of the Motion and related papers submitted to the Court indicates that Plaintiffs

20

seek relief stemming from violation of 29 U.S.C. § 1145, which provides that, "every employer

21

who is obligated to make contributions to a multiemployer plan under the terms of a collectively

22

bargained agreement shall to the extent not inconsistent with the law, make such contributions in

23

accordance with the terms and conditions of such plan or agreement."  29 U.S.C. § 1145 (1980).

24

In the instant case, Plaintiffs brought this ERISA action pursuant to 29 U.S.C. § 1132(g),

25

which grants the fiduciaries of an employee-benefits fund a federal cause of action to enforce the

26

employer's obligations imposed by 29 U.S.C. § 1145.  In order to prevail on a claim for unpaid

27

contributions under an ERISA plan, a plaintiff must provide that: (1) the trust funds are a

28

qualified multi-employer plan as defined by 29 U.S.C. § 1002(37); (2) the defendant is an

employer obligated to contribute under the plan's terms; and (3) the defendant failed to contribute in accordance to the plan.  *See Bd. of Tr. of the Sheet Metal Workers Health Care Plan of N. CA v. Gervasio Envtl. Sys.*, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004; *see also Nw. Adm'rs, Inc. v. Albertson's, Inc*., 104 F.3d 253, 257 (9th Cir. 1996) (holding that a plaintiff is entitled to a mandatory award under § 1332(g)(2) if "(1) the employer [is] delinquent at the time the action is filed; (2) the district court [entered] a judgment against the employer; and (3) the plan [provided] for such an award.")

In their Complaint, Plaintiffs have alleged all the facts necessary to establish their ERISA claim in order to support an award of default judgment.  Plaintiffs represent various joint labor-management trust funds, which qualify as a multi-employer plan within the meaning of 29 U.S.C. § 1002(37).  On September 28, 2004, Plaintiffs entered into a Collective Bargaining Agreement with Defendant.  (*See* Pls' Reply to Order Re: Supplemental Briefing on Pls.' Mot. for Default J., Ex. C.)  Under the Collective Bargaining Agreement, Defendant was required to submit monthly reports indicating the identities of its electrician employees covered under the Agreement, and the hours they worked.  (*See* Mot. for Default J., Ex. A at 9.)  Defendant was also required to pay monthly fringe benefit contributions to Plaintiffs for the hours worked by these employees.  (*See* Mot. for Default J., Ex. A.)  Plaintiffs allege that Defendant failed to submit the reports and make contributions according to the Collective Bargaining Agreement for the months of January, February, March, and April 2005.  (*See* Mot. for Default J. at 3-4.)  Accepting all factual allegations as true, the Complaint establishes that Defendant is in clear violation of the terms of the Collective Bargaining Agreement.  Therefore, Plaintiffs have adequately demonstrated a substantial likelihood of success on the merits of their claim.

**B.     Plaintiffs Will Suffer Prejudice Without Entry of Default Judgment**

Plaintiffs "would suffer prejudice if . . . default judgment is not entered [if the] [p]laintiffs would be denied the right to judicial resolution of the claims presented[] and would be without other recourse for recovery." *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).  Here, the parties entered into a Collective Bargaining Agreement, whereby Defendant was obligated to make timely contributions to Plaintiffs' Trust Funds.  According to Plaintiffs, Defendant has breached this obligation under the Collective Bargaining Agreement by

failing to make the payments.  Because Defendant defaulted on their regular payment schedule, Plaintiffs have suffered damages not only in the delinquent amounts, but also any interest that would have accrued on the contributed funds.  Without an entry of a judgment by default, Plaintiffs will be left with no alternative recourse against Defendant, and will be unable to collect the amounts owed to them.  Thus, the Court **FINDS** that denial of the relief requested will be prejudicial to Plaintiffs, and this factor weighs in favor of granting a default judgment.

### C.   The Sum of Money at Stake is not Unreasonable

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendant.  Under this factor, the Court should take into account the amount of money at stake in relation to the seriousness of Defendant's conduct.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, then default judgment is warranted.  *See Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 984 F. Supp. 978, 978 (N.D. Cal. 1997.)  This Court may also take into consideration whether "the amount of money at stake is reasonable, properly documented and contractually justified."  *See Bd. of Trs. of N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *5 (N.D. Cal. December 29, 2000).

In the instant case, Plaintiffs only seek the amount owed under the terms of the Collective Bargaining Agreement and Trust Agreements.  (*See* Mot. for Entry of Default J. at 3-5.)  The amount requested by Plaintiffs is meant to place Plaintiffs in the position they would have been in had Defendant not breached the Collective Bargaining Agreement.  This amount is not substantial enough to weigh in favor of denying a default judgment.  Moreover, it reflects only four months of expected contributions to the Trusts, plus the costs of enforcing the Collective Bargaining Agreement.  The amount of money demanded is not a large sum under these circumstances and an award in that amount is not exceedingly harsh.  Thus, the Court **FINDS** that the sum of money at stake is not unreasonable.

1

#### D.      There is No Dispute Concerning Material Facts

2

The " 'factual allegations of the complaint, except those relating to the amount of

3

damages, [are] taken as true.' " *TeleVideo*, 826 F.2d at 917-18.  The Court has not been

4

presented with any evidence that suggests there is a serious dispute concerning the material

5

facts.  Defendant filed a conclusory answer asserting several affirmative defenses without

6

providing any specific facts or allegations which contradict the allegations of the Complaint.

7

Additionally, it appears that Defendant is not likely to defend this suit.  Other than filing an

8

Answer, Defendant has completely failed to respond to discovery requests, and has not appeared

9

or filed any opposition to the Motion for Default Judgment.  Therefore, this Court **FINDS** that

10

there is very little possibility of dispute concerning material facts.

11

#### E.      Defendant's Default Was Not Due to Excusable Neglect

12

The fifth *Eitel* factor considers the possibility that Defendant's default was the result of

13

excusable neglect.  Under this analysis, the Court considers whether Defendant was put on

14

adequate notice of the pendency of the action brought against it.  *See Phillip Morris USA, Inc. v.*

15

*Castworld Prods. Inc*., 219 F.R.D. 494, 499 (C.D. Cal. 2003).

16

Here, Defendant was properly served with a Complaint, and Defendant filed an Answer.

17

However, Defendant then failed to correspond with its counsel, who filed and was granted a

18

motion to be relieved as counsel. (*See* Order Granting Mot. to be Relieved As Counsel.)

19

Thereafter, because Defendant failed to appear with replacement counsel, this Court entered

20

default judgment in Plaintiffs' favor.  (*See* Default Order at 1.)  Defendant was then properly

21

served with the instant motion for Default Judgment.  To date, Defendant has failed to file a

22

response or make any appearance.  Therefore, because Defendant was properly served with the

23

Notice of Motion for Default Judgment, and at all times, had the ability and reasonable

24

opportunity to oppose such action, the Court **FINDS** that Defendant's default was not due to

25

excusable neglect.

26

27

28

1

2

**F.     A Decision on the Merits is Impractical Due to Defendant's Failure to Respond**

3       As a general rule, default judgments are disfavored due to the strong public policy

4    supporting adjudication of cases on their merits.  *See Pena v. Seguros La Comercial, S.A.*, 770

5    F.2d 811, 814 (9th Cir. 1985).  However, "[w]hile the public policy favoring disposition of cases

6    on their merits weighs against default judgment, that single factor is not enough to preclude

7    imposition of this sanction when . . . other . . . factors weigh in its favor."  *Rio Props., Inc. v. Rio*

8    *Intern. Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002).  Due to Defendant's failure to appear or

9    defend this matter, and because the other *Eitel* factors weigh in Plaintiffs' favor, the Court

10   **FINDS** that a decision on the merits is impractical.

11

12   **III.   Relief Sought**

13       Plaintiffs seek $8,650.19 in delinquent fringe benefit contributions, $903.69 in interest on

14   the unpaid contributions, $1,485.81 in liquidated damages, $5,106.50 in attorneys' fees, and

15   $498.60 in court costs.  The total judgment sought is $16,644.79.

16       ERISA provides a "statutory remedy for a trust fund fiduciary suing to collect unpaid plan

17   contributions."  *Idaho Plumbers and Pipefitters Health and Welfare Fund* v. *United Mech.*

18   *Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989).  The following relief is mandatory: 1)

19   unpaid contributions; 2) interest on the unpaid contributions; 3) an amount equal to either the

20   interest on the unpaid contributions or liquidated damages; and 4) attorneys' fees and costs.  29

21   U.S.C. § 1132(g)(2) (2007); *Idaho Plumbers*, 875 F.2d at 215.  The legislative history of the

22   statute indicates that "[t]he bill preempts any State or other law which would prevent the award

23   of reasonable attorneys fees, court costs or liquidated damages or which would limit liquidated

24   damages to an amount below the 20 percent level."  *Id.* at 216.  Thus, if the statutory conditions

25   are satisfied, the Court must award unpaid contributions, interest, liquidated damages and

26   attorneys' fees.  However, "a judgment by default shall not be different in kind from or exceed

27   in amount that prayed for in the demand for judgment."  Fed. R. Civ. P. 54(c).

28

### A.    Unpaid Contributions

As a signatory of the Collective Bargaining Agreement, Defendant was required to report hours worked by its electrician employees and to make monthly fringe benefit contributions for such employees to Plaintiffs.  (*See* Mot. for Default J., Ex. A at 9.)  Plaintiffs allege that Defendant failed to report the hours worked by two of its employees and pay the fringe benefit contributions for such employees to Plaintiffs for the months of January, February, March and April 2005.  (*See* Mot. for Default J. at 4.)  According to Plaintiffs, the unpaid contributions for these months amounted to $8,650.19.  (*See id*.)

To support this claim, Plaintiffs submitted a spreadsheet to the Court, which indicates the number of hours worked by the two employees for Defendant during the applicable months and the contributions owed to the trusts for each month.  (*See* Mot. for Default J., Ex. H.)  The handwritten daily logs of the two employees, the Declaration of Johnny Simpson, the Declaration of Robin Wheelock, and the Collective Bargaining Agreement, confirm the amounts of contributions owed according to the spreadsheet with one exception.  (*See* Mot. for Default J., Exs. A, G; Decl. of Johnny Simpson in Supp. of Pls.' Supplemental Br. on Mot. for Default J.; Decl. of Robin Wheelock in Supp. of Pls.' Supplemental Br. on Mot. for Default J.)

The Collective Bargaining Agreement provides that, "[t]he Employer agrees to deduct $0.05 from each hour of wages of each employee who voluntarily authorizes such contributions on forms provided.  This deduction is sent to the Local Union to be forwarded to IBEW-COPE." (Mot. for Default J., Ex. A at 10.)  The amount of the unpaid contributions under this provision of the Collective Bargaining Agreement is reflected under the "Dues" column of the spreadsheet submitted by Plaintiffs.  (*See* Mot. for Default J., Ex. H.)  Plaintiffs assert that $684.86 total is due.  (*See id*.)  To arrive at this figure, Plaintiffs incorrectly interpreted the language quoted above to mean that $0.05 is deducted from each dollar of wages earned by the employee. The language of the contract states that $0.05 is deducted for each hour worked by the employee.  In accordance with this interpretation, the contributions under the "Dues" column are calculated as follows:

| Name | Hours | Month | Dues |
|------|-------|-------|------|
| Colbert | 8 | January | $0.40 |
| Berkshire | 135 | January | $6.75 |
| Colbert | 154 | February | $7.70 |
| Berkshire | 152 | February | $7.60 |
| Colbert | 149 | March | $7.45 |
| Berkshire | 112 | March | $5.60 |
| Colbert | 48 | April | $2.40 |
| | | | $37.90 |

Therefore, while Plaintiffs request $684.86 in unpaid contribution under the "Dues" column, this Court **FINDS** that the amount owed is $37.90, based on the above calculations.

Plaintiffs have requested $8,650.19 in delinquent contributions. However, to reflect the above correction in the calculation of contributions owed under the "Dues" column, the Court **FINDS** that the total amount Defendant owes in delinquent contributions to Plaintiffs is $8,003.23.

**B.     Interest**

An award of interest is statutorily mandated. *See* 29 U.S.C. § 1132(g)(2) (2007). "For purposes of [Section 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. 1132(g) (2007). Plaintiffs allege a total of $903.69 in interest. (*See* Decl. of Robin Wheelock in Supp. of Default J. at 4.) This sum reflects the total interest accumulated on delinquent contributions owed to the National Labor Management Cooperation Fund, the San Diego Electrical Pension Trust, the San Diego Electrical Health and Welfare Trust, the San Diego Electrical Annuity Plan, and the National Electrical Benefit Fund. (*See id* at 4 n.2.)

As a signatory of the Collective Bargaining Agreement, Defendant was subject to the terms and provisions of the above Trusts Agreements. (*See* Pls.' Supplemental Br. on Mot. for Default J. at 5-6.) The Court will now analyze the language of the Collective Bargaining Agreement and the Trust Agreements to determine what amount of interest on the delinquent contributions Defendant owes to each Trust Fund.[1]

---

[1] The amounts of the delinquent contributions for each month owed to each Trust Fund can be found on the spreadsheet provided by Plaintiffs. (*See* Mot. for Default J., Ex H.)

05cv1153 J (LSP)

### 1.     The National Labor Management Cooperation Fund

The amount of interest owed on contributions to the National Labor Management Cooperation Fund is provided in the Collective Bargaining Agreement.  It states that:

> [I]f an Employer fails to make the required contributions to the Fund . . . the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20.00), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages . . . Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.

(*See* Mot. for Default J., Ex. A at 12.)  In accordance with this language, the interest due on the delinquent contributions to the National Labor Management Cooperative Fund is calculated as follows:

| Month[2] | Delinquent Contributions (+ liquidated damages) | Interest Owed |
|---|---|---|
| January | $20.56 | $2.48 |
| February | $30.78 | $3.46 |
| March | $30.43 | $3.17 |
| April | $23.36 | $2.24 |
| | | $11.35 |

Therefore, the total interest owed to the National Labor Management Cooperative Fund is $11.35.

### 2.     The San Diego Electrical Pension Trust

The Trust Agreement governing the San Diego Electrical Pension Trust provides that "delinquent contributions shall bear interest at the rate of ten percent (10%) per annum from the due date until they are paid."  (*See* Mot. for Default J., Ex. B at 17.)  In accordance with this language, the interest due on the delinquent contributions to the San Diego Electrical Pension Trust is calculated as follows:

---

[2] The Collective Bargaining Agreement requires the contributions to be made on or before the 15th day of the month following the month in which the hours were worked.  (*See* Mot. for Default J., Ex. A at 9.)  Plaintiffs calculated the interest through April 30, 2006.  (*See* Decl. of Robin Wheelock in Supp. of Default J. at 4.)  Therefore, for example, the interest owed on the delinquent payments for the month of January 2005 would accrue from February 15, 2005 to April 30, 2006 for a total of 14.5 months.

| Month | Delinquent Contribution | Interest Owed |
|---|---|---|
| January | $48.30 | $5.84 |
| February | $685.10 | $77.07 |
| March | $659.35 | $68.68 |
| April | $208.80 | $20.01 |
| | | $171.60 |

Therefore, the total interest owed to the San Diego Electrical Pension Trust is $171.60.

### 3. The San Diego Electrical Health and Welfare Trust

The Second Amendment to the Trust Agreement Governing the San Diego Electrical Health and Welfare Trust provides that "delinquent contributions shall bear interest at the rate of ten percent (10%) per annum from the due date until they are paid in full." (*See* Mot. for Default J., Ex. C at 28.) In accordance with this language, the interest due on the delinquent contributions to the San Diego Electrical Health and Welfare Trust is calculated as follows:

| Month | Delinquent Contribution | Interest Owed |
|---|---|---|
| January | $739.84 | $89.40 |
| February | $1714.56 | $192.89 |
| March | $1479.36 | $154.10 |
| April | $291.84 | $27.97 |
| | | $464.36 |

Therefore, the total interest owed to the San Diego Electrical Health and Welfare Trust is $464.36.

### 4. The San Diego Electrical Training Trust Fund

The Trust Agreement Governing the San Diego Electrical Training Trust Fund provides that "delinquent contributions shall bear interest at the rate of ten percent (10%) per annum from the due date until they are paid." (*See* Mot. for Default J., Ex. D at 33.) In accordance with this language, the interest due on the delinquent contributions to the Labor Management Cooperative Fund is calculated as follows:

| Month | Delinquent Contributions[3] | Interest Owed |
|---|---|---|
| January | $78.65 | $9.50 |
| February | $168.30 | $18.93 |
| March | $143.55 | $14.95 |
| April | $26.40 | $2.53 |
| | | $45.91 |

Therefore, the total interest owed to the San Diego Electrical Training Trust Fund is $45.91.

### 5.   The San Diego Electrical Annuity Plan

The San Diego Electrical Annuity Plan Trust Agreement provides that "delinquent contributions shall bear interest at the rate of twelve percent (12%) per annum from the due date until they are paid." (*See* Mot. for Default J., Ex. E at 40.) In accordance with this language, the interest due on the delinquent contributions to the San Diego Electrical Annuity Plan is calculated as follows:

| Month | Delinquent Contribution | Interest Owed |
|---|---|---|
| January | $1230 | $178.35 |
| February | $0 | $0 |
| March | $0 | $0 |
| April | $0 | $0 |
| | | $178.35 |

Therefore, the total interest owed to the San Diego Electric Annuity Plan is $178.35.

---

[3] The spreadsheet provided by Plaintiffs does not include the contribution owed to the San Diego Electrical Training Trust Fund for each month. (*See* Mot. for Default J. Ex H.) However, the Collective Bargaining Agreement provides that "[e]ach signatory Employer shall make monthly contributions into the San Diego Electrical Industry Training Trust and Manpower Development Trust in the amount of sixty-five ($.65) cents per hour for each hour worked by each employee covered by the terms of this Agreement . . .[o]n receipt of these funds, the Electrical Industry Training Trust Administrative Offices shall deposit fifty-five ($.55) cents into the San Diego Electrical Industry Trust." (Mot. for Default J., Ex A at 8.) Therefore, Defendant was required to make contributions of $.55 cents for each hour worked by its employee per month to the San Diego Electrical Training Trust Fund. In January 2005, Defendant's two employees worked a total of 143 hours, requiring a contribution of $78.65 to the Fund. In February 2005, Defendant's two employees worked a total of 306 hours, requiring a contribution of $168.30. In March 2005, Defendant's two employees worked a total of 261 hours, requiring a contribution of $143.55. In April 2005, Defendant's one employee worked 48 hours, requiring a contribution of $26.40.

### 6.   The National Electrical Benefit Fund

The Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund provides that interest on delinquent contributions is "to be calculated at a ten percent (10%) annual rate compounded monthly through the period of the delinquency." (*See* Mot. for Default J., Ex. F at 46.)  The Court is unable to determine based on this language alone, whether the interest is compounded for each month of delinquent contributions separately, or if a delinquent contribution and interest from a previous month is added to the delinquent contribution for the following month and then compounded.  Accordingly, and for the foregoing reasons, the Court **FINDS** that the interest owed to the National Electrical Benefit Fund cannot be calculated until Plaintiffs provide further information or a formula as to how they calculated the compound interest.

### 7.   Total Interest Owed

Plaintiffs request interest on the delinquent payments in the amount of $903.69. However, Plaintiffs failed to provide the Court with sufficient information on how they arrived at this amount.  Based on the foregoing calculations the Court **FINDS** that the total interest owed is $871.57.  This amount is a sum of the interest owed to the National Labor Management Fund, the San Diego Electrical Pension Trust, the San Diego Electrical Health and Welfare Trust, the San Diego Electrical Training Trust Fund, and the San Diego Electrical Annuity Plan.

As to the interest owed to the National Electrical Benefit Fund, the Court cannot calculate the interest owed until Plaintiffs provide further information or a formula as to how they calculated the compound interest.  Therefore the Court **GRANTS leave** to Plaintiffs to provide the necessary evidence to calculate the interest owed to the National Electrical Benefit Fund.

### C.   Liquidated Damages

The liquidated damages provision of Section 1132 "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumber*, 875 F.2d at 215 (citations omitted).  Plaintiffs allege a total of $1,485.81 in liquidated damages.  (*See* Decl. of Robin Wheelock in Supp. of Default J. at 4.)  This sum is a total of the liquidated damages owed to the National Labor Management Cooperation Fund, the San Diego Electrical Pension Trust, the San Diego

Electrical Health and Welfare Trust, the San Diego Electrical Annuity Plan, and the National Electrical Benefit Fund.  (*See id.* at 4 n.2.)

This Court will now analyze the language of the Collective Bargaining Agreement and the Trust Agreements to determine the amount of liquidated damages Defendant owed to each Trust Fund for the delinquent contributions.

### 1.    The National Labor Management Cooperation Fund

The amount of liquidated damages owed on delinquent contributions to the National Labor Management Cooperation Fund is provided in the Collective Bargaining Agreement.  It states that "if an Employer fails to make the required contributions to the Fund . . . the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20.00), for each month payment of contributions is delinquent to the Fund." (*See* Mot. for Default J., Ex. A at 12.)  In accordance with this language, the liquidated damages due on the delinquent contributions to the National Labor Management Cooperative Fund are calculated as follows:

| Month | Delinquent Contributions[4] | Liquidated Damages Owed |
|---|---|---|
| January | $.56 | $20.00 |
| February | $10.78 | $20.00 |
| March | $10.43 | $20.00 |
| April | $3.36 | $20.00 |
| | | $80.00 |

Therefore, the total in liquidated damages owed to the National Labor Management Cooperative fund is $80.00.

### 2.    The San Diego Electrical Pension Trust

The Trust Agreement governing the San Diego Electrical Pension Trust provides that "if any employer shall be delinquent in the payment of contributions, such employer shall be liable . . . for liquidated damages of ten percent (10%) of the amount of contributions which are owed." (*See* Mot. for Default J., Ex. B at 17.)  In accordance with this language, the liquidated damages due on the delinquent contributions to the San Diego Electric Pension Trust are calculated as follows:

---

[4] As with the interest calculations, the amounts of the delinquent contributions for each month are taken from the spreadsheet provided by Plaintiffs.  (*See* Mot. for Default J., Ex H.)

| Month | Delinquent Contribution | Liquidated Damages Owed |
|---|---|---|
| January | $48.30 | $4.83 |
| February | $685.10 | $68.51 |
| March | $659.35 | $65.94 |
| April | $208.80 | $20.88 |
| | | $160.16 |

Therefore, the total in liquidated damages owed to the San Diego Electrical Pension Trust is $160.16.

### 3.   The San Diego Electrical Health and Welfare Trust

The Second Amendment to the Trust Agreement Governing the San Diego Electrical Health and Welfare Trust provides that:

> [T]he assessment of liquidated damages shall be converted to the following schedule:
>
> 1½ % of the principal if late 1-30 days;
> 3% of the principal if late 31-60 days;
> 1½ % will accrue for each additional thirty days late, up to a maximum of 18% per annum.

(*See* Mot. for Default J., Ex. C at 28.)  In accordance with this language, the liquidated damages due on the delinquent contributions to the San Diego Health and Welfare Trust are calculated as follows:

| Month | Delinquent Contribution | Liquidated Damages Owed |
|---|---|---|
| January | $739.84 | $155.37 |
| February | $1714.56 | $334.34 |
| March | $1479.36 | $266.28 |
| April | $291.84 | $48.15 |
| | | $804.14 |

Therefore, the total liquidated damages owed to the San Diego Electrical Health and Welfare Fund is $804.14.

### 4.   The San Diego Electrical Training Trust Fund

The Trust Agreement Governing the San Diego Electrical Training Trust Fund provides that if employers fail to pay their contributions they are liable "for liquidated damages of ten percent (10%) of the amount of contributions which are owed or fifty dollars ($50.00) whichever is the greater."  (*See* Mot. for Default J., Ex. D at 33.)  In accordance with this language, the

17

liquidated damages due on the delinquent contributions to the San Diego Electric Training Trust Fund are calculated as follows:

| Month | Delinquent Contributions | Liquidated Damages Owed |
|---|---|---|
| January | $78.65 | $7.87 |
| February | $168.30 | $16.83 |
| March | $143.55 | $14.36 |
| April | $26.40 | $2.64 |
| | | $41.70 |

Because the sum total of 10% of the amount of contributions owed is less than $50.00, the total amount of liquidated damages owed to the San Diego Electrical Training Trust Fund is $50.00.

### 5.    The San Diego Electrical Annuity Plan

The San Diego Electrical Annuity Plan Trust Agreement provides that employers are liable for "liquidated damages of twelve percent (12%) of the amount of contributions which are owed, or one hundred dollars ($100.00), whichever is the greater." (*See* Mot. for Default J., Ex. E at 40.) In accordance with this language, the liquidated damages due on the delinquent contributions to the San Diego Electrical Annuity Plan are calculated as follows:

| Month | Delinquent Contribution | Liquidated Damages Owed |
|---|---|---|
| January | $1230.00 | $147.60 |
| February | $0 | $0 |
| March | $0 | $0 |
| April | $0 | $0 |
| | | $147.60 |

Therefore, the total in liquidated damages owed to the San Diego Electrical Annuity Plan is $147.60.

### 6.    The National Electrical Benefit Fund

The Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund provides that "[i]n the event a Covered Employer . . . fails to make required contributions, the Trustees are authorized and empowered to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent." (*See* Mot. for Default J., Ex. F at 46.) In accordance with this language, the

liquidated damages due on the delinquent contributions to the National Electrical Benefit Fund are calculated as follows:

| Month | Delinquent Contribution | Liquidated Damages Owed |
|-------|------------------------|-------------------------|
| January | $85.31 | $17.06 |
| February | $241.44 | $48.29 |
| March | $214.14 | $42.83 |
| April | $48.96 | $9.79 |
|  |  | $117.97 |

Therefore, the total liquidated damages owed to the National Electrical Benefit Fund are $117.97.

### 7.    Total Liquidated Damages Owed

Plaintiffs requested for liquidated damages in the amount of $1,485.81.  However, the Court is unable to determine how Plaintiffs arrived at that amount.  Therefore, in accordance with the above calculations the Court **AWARDS** a total of $1,359.87 in liquidated damages to Plaintiffs.

### D.    Attorneys' Fees

Attorneys' fees are also mandatory in Section 1132(g)(2) cases.  *See Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir. 1988); *see also Kemmis v. McGoldrick*, 706 F.2d 993 (9th Cir. 1983).  However, the attorneys' fees must be reasonable.  *See Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)).  In this case, Plaintiffs are seeking $5,106.50 in attorneys' fees.  (*See* Decl. of Robin Wheelock in Supp. of Default J., at 4-5.)  Plaintiffs' attorney expended 20.60 hours on this matter at an hourly rate of $240.00.  (*See* Mot. for Default J., Ex. I.)  The Court **FINDS** that the attorneys' fees requested in this case are reasonable given the number of hours billed, the amount charged and the complexity of the work, and **AWARDS** $5,106.50 in attorney's fees.

### E.    Court Costs

Plaintiffs also seek $498.60 in court costs including: 1) $267.50 for the court filing fee; 2) $120.25 for the attorney service of filing of the Summons and Complaint with the Court; 3) $50.00 for the service of the Summons and Complaint on Defendant; 4) $45.00 for the attorney

service of filing of Proof of Service with the Court; and 5) $15.85 for photocopies and postage. The Court **FINDS** that these court costs are justified, and **AWARDS** $498.60 in court costs.

### *Conclusion*

For the reasons set forth above, the Court (1) **GRANTS** Plaintiffs' Motion for Default Judgment; (2) **AWARDS** judgment in Plaintiffs' favor in the amount of $15,839.77, which is the sum total of the following amounts:

1) $8,003.23 for delinquent fringe benefit contributions;

2) $871.57 for interest on the delinquent contributions;

3) $1,359.87 for liquidated damages;

4) $5,106.50 for attorneys' fees; and

5) $498.60 for court costs;

and (3) **GRANTS LEAVE** to Plaintiffs to provide the necessary evidence to calculate the interest owed to the National Electric Benefit Fund **no later than fifteen (15) days** after the date this Order is stamped and filed.

**IT IS SO ORDERED.**

DATED:  November 16, 2006

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: Magistrate Judge Papas
    Excellent Electric, Inc.
    All Counsel of Record

05cv1153 J (LSP)